UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LEMONT ROGERS a/k/a EAN SMITH, | ) |
| Plaintiff, | ) |
| VS. | ) Civil Action No: SA-04-CA-0118-XR |
| OFFICER LANCE BONNETT, Badge # 409, and CITY OF CASTLE HILLS, | ) |
| Defendants. | ) |

**ORDER**

On this date, the Court considered Defendant City of Castle Hills' Motion for Summary Judgment (docket no. 117), and Response and Reply thereto, as well as Plaintiff's Opposed Motion for Leave to file Plaintiff's Supplemental Response to Defendant City of Castle Hills' Motion for Summary Judgment (docket no. 123) and the Response thereto.

**I. Facts and Background**

Plaintiff's Second Amended Complaint (docket no. 89) is the live pleading. Therein, Plaintiff brings suit under § 1983 against Officer Lance Bonnette of the Castle Hills police department and the City of Castle Hills. Plaintiff alleges that, on October 12, 2002, he was seated in the driver's seat of a Ford Explorer when Defendant Bonnette approached him. He further alleges that, without provocation, Bonnette fired a shot into the vehicle and that, after Plaintiff exited the vehicle, Bonnette shot him in the back, even though he was cooperative and unarmed.

Plaintiff alleges that Defendant City of Castle Hills violated his constitutional rights and failed in its duty to properly train, control, and supervise Bonnette. Specifically, in Count I, Plaintiff alleges

1

that the City violated his Fourth, Fifth, and Fourteenth Amendment rights "in that at the time of the shooting made the basis of Plaintiff's claims, Defendant Bonnette was following written, or informal policies and/or procedures and/or customs and practices established by the City of Castle Hills" and "such violations constituted deliberate indifference to the Constitutional rights of the Plaintiff." In Count II, Plaintiff alleges that "[a]s a result of the City's failure to properly train Defendant Bonnette, Defendant Bonnette undertook the violative actions as discussed herein which deprived Plaintiff of his constitutional rights and caused his injuries. Defendant City's failure to properly train Defendant Bonnette constituted deliberate indifference to Plaintiff's constitutional rights." In Count III, Plaintiff alleges that the City failed to properly supervise Bonnette, as a result of which he "undertook the violative actions" and the failure to properly supervise constituted deliberate indifference to Plaintiff's constitutional rights.

Defendant City of Castle Hills now moves for summary judgment, arguing that Plaintiff has failed to show a custom or policy of the City that was a direct proximate cause of the incident, and that it was not deliberately indifferent to Plaintiff's constitutional rights. The City submits as summary judgment evidence the SAPD Shooting Team Investigation Excerpts, Bonnette's TCLEOSE Certification dated July 28, 2000, the affidavit of Police Chief Donnie Davis, and correspondence from the United States Department of Justice and the Bexar County District Attorney's office.[1] Plaintiff submits an April 22, 2004 affidavit of Bonnette, Plaintiff's August 4, 2004 affidavit describing the October 12, 2002 shooting incident that forms the basis of this case, Plaintiff's medical records, Bonnette's application for employment as a dispatcher dated April 22,

---

[1] The D.O.J. letter, dated June 8, 2004, states that the D.O.J. has closed its investigation into the alleged violation of the federal criminal rights statutes. The Bexar County D.A.'s letter, dated March 6, 2003, states that the Grand Jury no billed the case, and that this action concluded the investigation into the case.

2

1993, portions of the Castle Hills Police Manual, and an SAPD police report.

The summary-judgment evidence indicates that Bonnette has been an officer with the City of Castle Hills since June 2000, that he was assigned as a patrol officer at the time of the shooting, and that before that he worked as a dispatcher for approximately seven and a half years. The evidence further indicates that Bonnette was on vacation at the time of the shooting and was at home with his son prior to the shooting. Bonnette lives in an apartment at the Cove Apartments, outside the city limits of Castle Hills, and is the "courtesy officer" for the apartments. Bonnette heard shots near his residence, and left his apartment with his weapon, wearing only his tennis shoes and jeans. It is undisputed that the shots Bonnette heard were fired by Plaintiff, who was involved in an altercation nearby and fired shots into an unoccupied vehicle.

The events that transpired between Bonnette and Plaintiff are disputed, and for purposes of this motion the Court takes the facts as alleged by Bonnette as true, and therefore assumes that Bonnette violated Plaintiff's constitutional rights.

## II. Analysis

### A. Applicable Legal Standards

Count I alleges that the City is liable for the constitutional torts because Defendant Bonnette was following written or informal policies and/or procedures and/or customs and practices established by the City of Castle Hills. "Under 42 U.S.C. § 1983, a municipality cannot be held vicariously liable for the constitutional torts of its employees or agents." *Gros v. City of Grand Prairie*, 181 F.3d 613, 615 (5th Cir. 1999). The first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). For liability to

attach, plaintiff must prove: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Plaintiff thus bears the burden of establishing either a formal policy officially adopted and promulgated by city policymakers, or a well-settled and common practice by city officials or employees of which the city or its policymakers were actually or constructively aware. *See Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).[2]

In Count II, Plaintiff alleges that the City is liable for the failure to train Bonnette. Failure to train may give rise to § 1983 liability. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989). However, the "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality-a 'policy' as defined by our prior cases-can a city be liable for such a failure under § 1983." *Id.* at 389.

In Count III, Plaintiff alleges that the City is liable for the alleged failure to supervise Bonnette. Evaluation of a claim for failure to supervise is evaluated in the same manner as a claim for failure to train. *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005); *Cervantes v. City of San Antonio*, Civ. A. No. SA:06-CV-235-XR, 2008 WL 2787249 at *5 (W.D. Tex. July 17, 2008).

---

[2] The Court notes that neither party in this case identifies a relevant policymaker. The Court will presume for purposes of this motion that it is Chief of Police Donnie Davis. *See* Castle Hills Police Department Rules and Regulations § 1.02(A) ("Pursuant to Chapter 19, of the City of Castle Hills Code of Ordinances the Chief of Police shall be the administrative head of the Police Department."). However, there is no specific evidence regarding who has final policymaking authority in this area.

**B. Official Policy or Custom**

The City asserts that Plaintiff has failed to identify a policy or practice on the part of the City that was a moving force behind Plaintiff's injury. A municipality is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy. Official policy is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

The City's police manual requires that officers within the City's corporate limits will consider themselves available for duty in any emergency situation, regardless of their actual duty status, and shall carry their police identification and an approved weapon. Police Manual § 4.01. It further states that an officer on "off-duty status" outside the City limits has "only the rights, authority, and privileges of a private citizen." *Id.* at § 4.01(B). The Manual instructs that "[a]n officer not in uniform, when exerting police authority, shall identify himself as a police officer and state the purpose or reason for his actions." *Id.* § 3.04(E).

Further, officers may discharge their firearms only "[i]n defense of one's life or the life of another." *Id.* § 3.31©). The Police Manual contains "procedure 501," which is titled "Use of Force." It provides that "[a]n officer uses deadly force only in situations which indicate that he or another person may be seriously injured or killed if such deadly force is not used." *Id.* § 501.05©). Further,

"[d]eadly force against one who is fleeing from custody, or who is fleeing immediately after committing an offense, is prohibited unless the officer has probable cause to believe that the suspect poses an imminent threat of death or serious bodily injury to the officer or a third party." *Id.* § 501.05(D). Firearms are not to be discharged as a warning shot, when it appears likely that a nonparticipant may be injured, or at or from a moving vehicle, except as the ultimate measure of self-defense or defense of another. *Id.* § 501.05(E).

Plaintiff points to no express or official policy or custom of the City authorizing use of deadly force in an unconstitutional manner that was a moving force behind Bonnette's unconstitutional use of force. In reviewing the summary-judgment evidence, the Court noted that the City's Police Manual, after stating that "[a]n officer uses deadly force only in situations which indicate that he or another person may be seriously injured or killed if such deadly force is not used," further specifies that "[a]n officer with an honest and sincere personal belief that his life or the life of another is in imminent danger is justified in using deadly force to preserve that life." *Id.* § 501.05©). In *Davis v. Montgomery County*, Civ. A. NO. H:07-505, 2009 WL 1226904 (S.D. Tex. April 30, 2009), the district court concluded that the County's policy for the use of deadly force, which included a subjective standard, was inconsistent with the constitutional requirement of objective reasonableness, and thus the plaintiff had presented some evidence that the County had trained and disciplined its officers using an unconstitutional policy. In this case, however, Plaintiff does not allege that Bonnette was trained under this express policy or that Bonnette was following this policy when he caused Plaintiff's harm. In contrast, Plaintiff alleges that the City did not train Bonnette in the contents of the Police Manual, and thus the policy would not have been a cause of the unconstitutional deadly force alleged.

6

Nor does Plaintiff attempt to establish a pattern or widespread practice of using deadly force in an unconstitutional manner such as to establish an implied policy or custom. Rather, Plaintiff attempts to invoke "single-incident" liability. That exception "recognizes that in a limited set of cases, a plaintiff, unable to show a pattern of constitutional violations, may establish deliberate indifference by 'showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights.'" *Burge v. St. Tammany Parish*, 336 F.3d 363, 373 (5th Cir. 2003) (quoting *McClendon v. City of Columbia*, 258 F.3d 432 442 (5th Cir. 2001)).

The Supreme Court has made it clear that a pattern of constitutional violations is not always a prerequisite to a showing of deliberate indifference. *Thompson v. Connick*, 553 F.3d 836, 852 (5th Cir. 2008). However, the Court has limited those single-incident situations to circumstances in which the need for training is "obvious" and when the violation of rights is a "highly predictable consequence" of the failure to train. *Id.* (citing *Burge v. St. Tammany Parish* (*Burge II*), 336 F.3d 363, 373 (5th Cir. 2003) (recognizing potential applicability of single-incident liability where "the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train"). With regard to training in the use of deadly force, the Court stated in a footnote:

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights. It could also be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are "deliberately indifferent" to the need.

7

*City of Canton*, 489 at 390 n.10. Even in deadly force cases, however, the Fifth Circuit has "been wary of finding municipal liability on the basis of this [single-incident] exception for a failure to train claim." *Pineda v. City of Houston*, 291 F.3d 325, 334-35 (5th Cir. 2002). The Court thus turns to the Plaintiff's specific claims of failure to train and failure to supervise under the single-incident exception.

**C. Failure to Train**

To establish the City's liability for failure to train, Plaintiff must show: (1) inadequate training procedures; (2) that inadequate training caused Bonnette to shoot Plaintiff; and (3) the deliberate indifference of municipal policymakers. *Pineda*, 291 F.3d at 332. "In resolving the issue of a city's liability, the focus must be on [the] adequacy of the training program in relation to the tasks the particular officers must perform." *Id.* (quoting *City of Canton*, 489 U.S. at 390). The inadequacy of training must be closely related to the injury. *Id.*

The City moves for summary judgment on the failure-to-train claim, arguing that its training policy regarding all of its officers, including Bonnette, "meet and exceed the required training set forth by the Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE)."[3] The City includes undisputed summary-judgment evidence demonstrating that

---

[3] The City's motion fails to explain what required training is set forth by TCLEOSE and how that requirement was exceeded. However, the City's Police Manual includes Procedure 906, entitled "Training And Evaluation." It provides that "[e]ach orientation officer will ride for six (6) weeks with the patrol shift Sergeant," including two weeks with each shift sergeant for swing, day, and evening shifts. Policy Manual § 906.02(A), (B). The orientation officer is evaluated by each shift sergeant, and once assigned to a shift, evaluated monthly. After the six-month orientation period, officers are evaluated by their sergeants every three months. With regard to required training, the policy manual states that the department will schedule all required training by the State (cultural diversity, special investigative courses, and 16 hours of other training), as well as all required firearms training, and "any other training that it feels will be beneficial in its operation." *Id.* § 906.04. The Manual further states that "[e]ach officer shall maintain minimum standards for retention of his license issued by the Texas Commission of Law Enforcement Officers Standards and Education" and that "[o]fficers are responsible to adhere to all Texas Commission on Law Enforcement Officer Standards and

8

Bonnette was appointed as a City of Castle Hills peace officer on May 31, 2000, that he began active duty on June 1, 2000, and that he was issued a Peace Officer License by TCLOESE on July 28, 2000. The Peace Officer License indicates that Bonnette completed certain courses, including basic, intermediate, and advanced reserve officer courses between July 1999 and March 2000, and "special investigative topics" in 2001.

The City also submits the affidavit of Chief of Police Donnie Davis, who was the Chief of Police at the time of the incident. He states that the City has twenty full-time police officers, that they are all certified by TCLEOSE, and that he has personal knowledge that Bonnette and all City officers are trained and supervised in accordance with state standards "and were so trained and supervised on the date of the incident in question."[4] The City cites to *Huong v. City of Port Arthur*, 961 F.

---

Education (TCLEOSE) training and the Law Enforcement Management Institute of Texas (LEMIT) requirements as mandated by law."

[4] Plaintiff objects to the certificates submitted by the City demonstrating Bonnette's TCLEOSE certification and courses as not authenticated, and requests an opportunity to cross-examine Bonnette at trial concerning his enrollment in and attendance at police courses prior to his work as a patrolman. Plaintiff further objects to Davis's affidavit as conclusory regarding the training of Bonnette and his peers, noting that it states with no factual detail or support that Bonnette and other officers are trained and supervised "in accordance with state standards," does not define state standards, and does not describe a single course, seminar, practice, meeting or other occurrence of training that Castle Hills provides to its officers.

The City responds that the certificates were "produced in discovery and pursuant to Local Rule CV-26(d) have been authenticated, as a matter of law." The City is mistaken in its view of this Court's local rule. Local Rule CV-26(d) provides that "A party's production of a document in response to written discovery authenticates the document for use *against that party* in any pretrial proceeding or at trial *unless* – within ten (10) days ... after the producing party has actual notice that the document will be used, the party objects to the authenticity of the document, or any part of it, stating the specific basis for objection." (Emphasis added.) First, under the rule's plain language, a party's production of a document authenticates it only for use *against* that party, not for use by that party. Second, it authenticates a document only if no objection is timely made, and here Plaintiff has objected. Thus, the certificate is not authenticated. However, as described more fully below, the Court has no basis on which to doubt the authenticity of the license.

With regard to Davis's affidavit, the City asserts that Davis's affidavit is not conclusory but is based on his personal knowledge, and that Davis knows that Bonnette and all members of the Castle Hills police force are trained in accordance with state standards under TCLEOSE. The Texas Commission on Law Enforcement Officer Standards and Education (Commission) is a state agency created by an act of the 59th Legislature. By law, the Commission may "establish minimum standards relating to competence and reliability, including

9

Supp. 1003 (E.D. Tex. 1997), in which the district court stated that "[a]ll that is required for the municipality to prevail in a claim based on inadequate training is compliance with state-mandated training standard for its officers." *Id.* at 1007.[5]

Plaintiff responds that "[t]he adequacy of an officer's training must be evaluated on a case-by-case basis, and completion of certification course work is not *per se* adequate training." Plaintiff asserts that there is no evidence of on-the-job training or training by the City concerning its police manual, which reflects the department's written policies, and that apparently "rookie patrolmen are to teach themselves on the contents of the police manual."[6] Plaintiff argues that the City's employment of certified police officers does not absolve it from liability for failure to train those

---

education, training, physical, mental, and moral standards, for licensing as an officer." Tex. Occupations Code § 1701.051. Further, "[t]he commission shall establish and maintain training programs for officers." *Id.* § 1701.251. A person may not be appointed as an officer without an appropriate license issued by the Commission. *Id.* § 1701.301. Further, the license application must be filed by the City. *Id.* § 1701.303. TCLEOSE has issued rules pursuant to its rulemaking authority. The rules provide that, to obtain a license, a person must meet minimum training standards and pass the commission licensing exam. Such training may consist of the current basic peace officer course or an approved alternative. Given the small size of the City's police force (twenty officers) and the requirement that the City apply for Bonnette's license, the Court finds Davis's affidavit sufficient to establish that he would have personal knowledge of the fact that Bonnette had a TCLEOSE license. The objections to Davis's affidavit are overruled.

[5] Other district courts have adopted similar positions. *See Davis v. Montgomery County*, Civ. A. No. H-07-505, 2009 WL 1226904 (S.D. Tex. April 30, 2009) ("In general, a plaintiff cannot sustain a cause of action for failure to train if a law enforcement department meets the state standards for training of its law enforcement officers." (citing *Conner v. Travis County*, 209 F.3d 794, 798 (5th Cir. 2000)). *Conner* involved an allegation that the County should have provided training in how to recognize a stroke. The Fifth Circuit noted that the guards were trained in "the basic medical training required by Texas law" and that the plaintiffs submitted no evidence of inadequacy other than their allegations and the testimony of an expert, which was properly disregarded. Further, in *Kalma v. City of Socorro*, Civ. A. No. EP-06-CA-418-DB, 2008 WL 954165 (W.D. Tex. Mar. 17, 2008), Judge Briones noted that the City's officers were required to be licensed by TCLEOSE and that plaintiff's failure to identify any deficiency in the TCLEOSE training causally related to the injury defeated the claim).

[6] Plaintiff cites the Police Manual § 3.28, which states that members shall learn and thoroughly understand the laws and ordinances that they are charged with enforcing and shall familiarize themselves with all written directives that are published by the Department and that affect their assignment.

10

officers as a matter of law. Plaintiff further contends that "[t]he key component missing from Castle Hills' summary judgment evidence is any affidavit from Mr. Bonnette concerning his training" and that the City "relies entirely upon unauthenticated certificates and the conclusory affidavit of Police Chief Davis." Thus, Plaintiff asserts, the evidence of training is inconclusive and not supported by any testimony from Bonnette. Plaintiff asserts that the Court should allow the evidence concerning Bonnette's training, or lack thereof, to be fully developed at trial. With regard to causation, Plaintiff contends that the issue depends on the material fact issue of the adequacy of Bonnette's training on the use of deadly force and other critical police procedures.

Plaintiff also argues that Bonnette's actions were so contrary to standard police practice, as reflected in the police manual, that his lack of training is obvious, and that the extreme departures from admitted police standards in the use of deadly force provide sufficient evidence of causation. Plaintiff points out that Bonnette failed to adhere to the police manual's requirements that he contact and seek assistance from SAPD, that his failure to carry identification was contrary to standard police practice, and that he showed a blatant lack of judgment and knowledge of basic police principles by running at night shirtless with a weapon and no indicia of police association. Plaintiff also argues that the manner in which Bonnette allegedly used deadly force – in the alleged absence of any imminent threat or justification – exhibited a complete lack of knowledge of constitutional expectations concerning the use of deadly force.

Plaintiff asserts that the "need to properly train Mr. Bonnette concerning his jurisdiction, the need to contact SAPD,[7] exhibiting reasonable self-control and the proper use of force was so obvious

---

[7] The Court notes that Plaintiff argues that even if Bonnette had been "on assignment" outside of Castle Hills, which he was not, the Manual plainly requires that he contact and seek assistance from SAPD, and that, had Bonnette been adequately trained concerning the jurisdiction provisions of the Manual, he would never have

11

that no pattern of other policy violations was necessary to put Castle Hills' on notice of its training obligations." Plaintiff further asserts that "had Mr. Bonnette been properly trained not to use deadly force against an unthreatening, unarmed suspect, Plaintiff would not have sustained his severe injuries."[8] Plaintiff further complains that Castle Hills has not conclusively proven adequate training, that there is no evidence of on-the-job training or training by Castle Hills concerning its Police Department General Manual, and no evidence that Bonnette received the manual.

The constitutional injury in this case is the allegedly unjustified use of deadly force. Thus, the issue is whether it should have been obvious to the City of Castle Hills policymaker that the highly predictable consequence of not training its officers beyond the basic TCLEOSE training was that the

---

left his apartment to investigate the gunshots he heard, and he would have called SAPD. Though these arguments tend to show a lack of a specific type of training that caused the injury in a broad "but-for" causation sense, the true injury Plaintiff complains of is the unconstitutional use of deadly force, and this injury is not dependent upon Bonnette's status as an on-duty or off-duty officer. "[T]he relevant constitutional standards do not change when the police officer works in an off-duty capacity." *Robles v. City of Fort Wayne*, 113 F.3d 732, 736 (7th Cir. 1997). Though in some cases there may be a need for different training related to an officer's off-duty activities, *see, e.g.*, *Brown v. Gray*, 227 F.3d 1278, 1286-87 (10th Cir. 2000) (always-on-duty policy required different training for off-duty arrests), Plaintiff does not point to any fact related to Bonnette's off-duty status or his being outside of Castle Hills that contributed to his injury in this case. Accordingly, the Court concludes that the relevant training here is training in the use of deadly force, not training regarding Bonnette's jurisdiction and the need to contact SAPD. *See City of Canton*, 489 U.S. at 391 ("Nor will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal.").

[8] Plaintiff asserts that Plaintiff's failure to carry identification is contrary to standard police practice. However, Plaintiff does not submit the relevant Manual provision to show that Bonnette would have been required to carry identification when off duty and out of Castle Hills city limits. In any event, however, Plaintiff does not allege that this alleged policy violation resulted in the constitutional violation, and thus the Court deems it irrelevant. The same can be said with regard to Plaintiff's arguments regarding the Manual's prohibition on wearing a weapon in a manner likely to alarm the public. Insofar as Plaintiff's arguments attempt to show that Bonnette was unaware of the policies outlined in the Manual, the Court takes note of this argument, but finds it immaterial because, even assuming Bonnette never received or was trained on the contents of the Manual as Plaintiff implies, Plaintiff has not shown how that failure resulted in the constitutional violation – unconstitutional use of deadly force – alleged, regardless of Bonnette's off-duty status.

officers would use deadly force in such a way that the Fourth Amendment rights of private citizens were at risk. *Brown v. Bryan County*, 219 F.3d 450, 461 (5th Cir. 2000). Though Plaintiff is correct that the City has not conclusively proved that Bonnette was adequately trained, the City's burden is not one of conclusive proof. Rather, it is the Plaintiff's burden to create a fact issue on the inadequacy of the training on the use of deadly force. *See Pineda*, 291 F.3d at 333. In that regard, there is simply no evidence that the TCLEOSE training was deficient as to the use of deadly force. *Id.* "Without this evidence plaintiffs cannot survive summary judgment." *Id.* As in *Pineda*, plaintiffs "ignore[] the basic training the GTF officers received." *Id.* at 334. It is undisputed that, unlike the officer in *Brown v. Bryan County*[9] who had no training, Bonnette had the basic TCLEOSE training. Plaintiffs do not reference the training that Bonnette had prior to the shooting, and "[t]here is no competent summary judgment evidence of any causal relationship between any shortcoming of the officers' training" and the injury complained of, and thus no issue whether additional training would have avoided the shooting. *Id.*[10] Certainly, Defendant City could have done a much better job of setting forth all of the training that Bonnette received regarding the use of deadly force; however, its failure to do so does not relieve the Plaintiff of his burden of raising a fact issue on the lack of training. The City has produced sufficient competent summary judgment evidence that Bonnette received TCLEOSE certification in 2000 before beginning work with the City, and Plaintiff has pointed to no deficiency in the required training for certification. And though the need for training in the use of deadly force is clearly obvious, Plaintiff's have failed to show that the City has a policy

---

[9] The Fifth Circuit noted in *Pineda* that, at the time, *Bryan County* was the only case in the circuit to apply the single incident exception to a failure-to-train claim.

[10] Although this goes to causation, the Fifth Circuit has noted that the requirements of proof of inadequacy of training and causation are, in many respects, intertwined. *Pineda*, 291 F.3d at 334 & n.36.

of inadequate training in the use of deadly force that led to the constitutional injury here.

Plaintiff's attempt to invoke single-incident liability must be rejected, as the mere fact that Bonnette may have violated Plaintiff's rights by using unconstitutional deadly force does not justify, on these facts, the conclusion that he was inadequately trained on such use.[11]  Plaintiff does not argue that any policymaker had reason to know that Bonnette individually needed training,[12] but rather argues that the City's policy regarding all officers to rely on TCLEOSE training is inadequate. However, as noted, Plaintiff points to no deficiency in the TCLEOSE training, and even if Bonnette individually was inadequately trained in TCLEOSE, the fact "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.... It may be, for example, that an otherwise sound program has occasionally been negligently administered." *City of Canton*, 489 U.S. at 390-91.  Further, there is no evidence that Bonnette did not attend the required courses or that any City policymaker had reason to believe that Bonnette was inadequately trained. The Court thus finds that summary judgment is appropriate on the failure-to-train claim.

**D. Failure to Supervise**

---

[11] Plaintiff cites to *Thompson v. Connick*, 553 F.3d 836, 853-54 (5th Cir. 2008), a recent Fifth Circuit case applying single incident liability on a failure-to-train theory, asserting that in that case the Court found that a J.D. degree and passage of the state bar exam was not *per se* adequate training on *Brady* issues.  In that case, the Court noted that "the jury heard evidence that attorneys, often fresh out of law school, would undoubtedly be required to confront *Brady* issues while at the DA's Office, that erroneous decisions regarding *Brady* evidence would result in serious constitutional violations, that resolution of *Brady* issues was often unclear, and that training in *Brady* would have been helpful."  However, attorneys are not routinely trained in *Brady* issues in law school, while police officers are trained in the appropriate use of force.  Moreover, the Fifth Circuit has granted rehearing *en banc* in that case.  562 F.3d 711 (5th Cir. 2009).

[12] Plaintiff asserts that there is no evidence that Bonnette actually attended his TCLEOSE courses. However, Plaintiff's theory attacks the general policy of accepting TCLEOSE certification, and has pointed to no deficiency in that training.  Plaintiff points to no evidence that any policymaker had any reason to believe that Plaintiff had not attended his TCLEOSE courses such as to invoke the deliberate indifference standard.

14

The City argues that "Plaintiff has further failed to show that lack of supervisory authority was a direct proximate cause of Plaintiff's alleged constitutional injuries." The Fifth Circuit has recognized that "a municipality is subject to [section] 1983 liability when the municipality's policies regarding employee ... supervision were obviously inadequate, and the resulting lack of ... supervision was likely to (and actually did) lead to a constitutional violation." *Drake v. City of Halthom City*, 106 Fed. Appx. 897, 899 (5th Cir.2004). There is no evidence of a lack of supervision or a policy regarding supervision that led to the violation in this case, and the Court finds that summary judgment on this claim is appropriate.

**E. Plaintiff's Opposed Motion for Leave to File Supplemental Response**

Plaintiff seeks to supplement the summary-judgment record with the deposition testimony of the City's expert, Ben Lively. The focus of the supplement is the City's alleged policy to "leave it to the officers to teach and train themselves the policies and procedures of the department." Lively agreed when asked whether "proper police procedures, especially the proper use of deadly force, is too critically important to leave to the officer to teach themselves." He further agreed that "lectures, insight provided by the instructor, training, and hands-on demonstrations are a critical part of the training process when teaching police procedures." And, he was not aware of any on-the-job training or additional training Bonnette received beyond the minimum TCLEOSE training (Though he stated that this did not mean that none occurred), and had no evidence that Bonnette was actually present for his TCLEOSE courses. These assertions, however, do not alter the Court's analysis above.

Plaintiff also contends that officers need additional training beyond the TCLEOSE minimum standards. Plaintiff points to Lively's testimony that the TCLEOSE classes are the minimum requirements to become licensed, but you still need to learn "how to play the game," which requires

15

"some additional training, on-the-job training." Lively testified an employer expects a graduate to have the basic fundamental skills and knowledge as TCLEOSE requires, but "[m]ost agencies realize that that's not sufficient, so they have FTO [field training officer] programs and they have further firearms training and report writing and computer skills and driving and many other things that the employer does later." He also agreed that the subject area of the use of force is complex. When asked if he would agreed that "you don't give him a handgun and expect him to go out and be able to keep the peace without violating constitutional rights and that sort of thing without additional training," Lively replied "it depends on the training they received in their basic academy and throughout their employment."

The Court will grant the motion and allow the supplement. However, it does not change the outcome on the motion for summary judgment.

The Fifth Circuit has held "that plaintiffs generally cannot show deliberate indifference through the opinion of only a single expert." *Conner v. Travis County*, 209 F.3d 794, 798 (5th Cir. 2000). As noted above, Plaintiff has not proffered any evidence that the TCLEOSE-mandated training is inadequate with regard to the use of deadly force other than Lively's statement that "most" departments realize that it is not sufficient and that "some additional training" is required.[13] It is not the City's burden to prove it was adequate, however, but Plaintiff's burden to raise a fact issue on inadequacy. Presumably, if the City's training requirements are inadequate and that inadequacy was so likely to result in the violation of constitutional rights, that there would have been other instances

---

[13] Further, there is no evidence that Bonnette did not receive additional training. Clearly the expert witness was not aware of what training Bonnette had received other than that he completed the TCLEOSE-required minimum, but even he noted that such additional training may have occurred.

of harm arising from the failure to train. *See Conner v. Travis County*, 209 F.3d 794, 797 (5th Cir. 2000) ("We can reasonably expect – if the need for training in this are was 'so obvious' and the failure to train was 'so likely to result in the violation of constitutional rights' – that the Connors would be able to identify other instances of harm arising from the failure to train. The fact that they did not do so undercuts their deliberate indifference claim.").

**Conclusion**

The Fifth Circuit has clearly instructed that single incident liability should be sparingly applied, even in cases involving the use of deadly force, lest the Court revert to *respondeat superior* liability in disguise. *Pineda*, 291 F.3d at 334-35. As noted, the City has put forth minimal evidence concerning Bonnette's training and the City's training requirements, and had the City set forth exactly what training Bonnette and its other officers receive, the analysis of this case would be much simpler. However, put simply, Plaintiff's claim fails for lack of proof that would raise a fact issue on the inadequacy of Bonnette's training that was causally related to the incident or demonstrated deliberate indifference on the part of the City. Accordingly, summary judgment for the City is appropriate.

The City's Motion for Summary Judgment (docket no. 117) is GRANTED and all claims against the City are DISMISSED. Plaintiff's Motion for Leave to File a Supplemental Response (docket no. 123) is GRANTED.

It is so ORDERED.

SIGNED this 21 day of July, 2009.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE