# In the United States District Court
# for the
# Western District of Texas

| | | |
|---|---|---|
| LEMONT ROGERS A/K/A | § | |
| EAN SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL NO. SA-04-CA-0118-XR |
| | § | |
| OFFICER LANCE BONNETT, | § | |
| BADGE #409 and | § | |
| CITY OF CASTLE HILLS | § | |
| | § | |
| Defendants. | § | |
| | § | |

**ORDER**

Before the Court is Plaintiff's Motion to Exclude Testimony and Opinions of Designated Expert Ben Lively (docket no. 126), Defendant's Response thereto, and Plaintiff's Reply.

## I. Facts and Procedural Background

On the night of October 12, 2002, Defendant Lance Bonnette, a patrol officer for the City of Castle Hills, Texas, was off-duty and at home at his apartment, which is located in San Antonio, Texas. A dispute had occurred nearby, during which Plaintiff Lemont Rogers fired a gun into an unoccupied Ford Explorer (hereinafter referred to as "vehicle one"). Upon hearing the gunshots, Defendant Bonnette exited his apartment to investigate. Bonnette observed Rogers running with something in his right hand, which Defendant

Bonnette believed to be a handgun. (Docket No. 126 at Exh. B). The events that transpired between Bonnette and Rogers are in dispute.

Rogers alleges that he got into a second vehicle ("vehicle two"), and Defendant Bonnette approached him while he sat in the driver's seat of the vehicle. *Id.* at Exh. B. According to Rogers, Defendant Bonnette fired a shot at him, which struck the vehicle in which Rogers was sitting. Rogers then exited the vehicle, and Defendant Bonnette fired another shot, striking Rogers in the back. *Id.* Plaintiff alleges that he was cooperating with Bonnette, and notes that he was unarmed, and that no weapons were found in the vehicle. Rogers sustained severe injuries from the gunshot wound and required emergency surgery.

Bonnette has attested that he saw Rogers throw an object he was holding in his right hand as he was running. Bonnette states that Rogers got into vehicle two and locked the door, so that Bonnette could not open the driver's side door. Bonnette states that he ran to the front of the vehicle, pointing his gun at Rogers, and yelled, "Police, get out of the vehicle, get out and get on the ground." Bonnette alleges that Rogers then started the car and revved the engine, so Bonnette jumped out of the way toward the driver's side of the vehicle. Bonnette is unsure of the exact sequence of events that occurred next, but Rogers allegedly opened the door and hit Bonnette with it, knocking him back, and he fired a shot at Rogers. After Bonnette was allegedly knocked back by the car door, Rogers fled on foot, and Bonnette pursued him. Bonnette alleges that Rogers ignored

his commands to stop, then allegedly reached his right arm across the front of his body as though he were reaching toward his waistband area. It looked to Bonnette as though Rogers was "blading off"[1] to shoot him, and Rogers' left side was facing him. Bonnette alleges that he was in fear for his life and "knew that [Rogers] was going for another weapon," and so he fired a single shot, which struck Rogers.

Plaintiff's claims include a 42 U.S.C. § 1983 claim against Defendant Bonnette for use of excessive force, and state-law battery and intentional infliction of emotional distress claims. The claims against the City were dismissed on summary judgment.

Defendants designated Ben Lively as an expert to testify about Defendant Bonnette's actions, Castle Hills' policies, and Caste Hills' training and supervision of the Defendant. Lively, trained as a law enforcement officer, reviewed the investigation by the San Antonio Police Department, including video, drawings, and photographs of the scene, the 9-1-1 calls, the Texas Penal Code and Texas Code of Criminal Procedure, and Castle Hills' policies and procedures. (Docket No. 126 at D).

Lively prepared a report dated April 28, 2009 and was deposed by Plaintiff's counsel on June 9, 2009. *Id.* at Exh. D; *Id.* at Exh. C. Lively's brief report states his qualifications, the materials he reviewed, and then lists the following opinions: (1) that Bonnette became an on-duty police officer upon

---

[1] Lively stated that "Blading off generically means turning your body to go on the offense, not the defense."

3

hearing shots fired and commencing an investigation; (2) that once Bonnette observed what he perceived to be criminal conduct on the part of Rogers, Bonnette "acted as a reasonable prudent officer would have acted under the same or similar circumstances"; (3) that the criminal conduct on the part of Rogers in creating a disturbance and firing a weapon resulted in Bonnette appropriately taking investigatory action to determine the extent of the criminal conduct which he perceived; (4) upon Bonnette confronting Rogers, "who is running with a handgun," Bonnette acted appropriately in yelling police commands to Rogers; (5) upon Rogers' ignoring the commands, fleeing, and discarding what appeared to be a handgun, Bonnette had reasonable suspicion and probable cause to continue his investigation of Rogers; (6) Bonnette acted reasonably when he attempted to stop Rogers from fleeing in a vehicle; (7) Bonnette acted reasonably in discharging his firearm as Plaintiff revved his engine and attempted to run over Bonnette; (8) when Rogers jumped out of the vehicle and fled on foot, Bonnette acted reasonably in attempting to apprehend Rogers; (9) Bonnette acted reasonably when Rogers made an overt gesture by reaching into his waistband area as if to retrieve another handgun, placing Bonnette in fear of imminent death or serious bodily injury and forcing Bonnette to discharge his firearm at Rogers; (10) deadly force was justified and was appropriate under the totality of the circumstances; and (11) Bonnette acted as a reasonable prudent officer exercising his discretionary authority in good faith at the time he discharged his weapon.

## II. Issues

Plaintiff now moves to exclude Lively's testimony. Plaintiff offers three principal challenges to Lively's testimony: (1) his testimony is unreliable because it is based on an incorrect version of critical facts; (2) his testimony is unreliable because it is based on incomplete facts; and (3) his opinions are improper legal conclusions and invade the province of the jury. Plaintiff does not challenge Lively's qualifications or his methodology.

Plaintiff argues that Lively's testimony must be excluded because he rendered his opinions based on incorrect and incomplete information. Specifically, Plaintiff contends that Lively's deposition revealed that he had an incorrect understanding of critical facts surrounding the shooting, and that his understanding of the facts did not comport with either party's version of events. Because a determination of the reasonableness of a use of deadly force in the Fourth Amendment context requires careful attention to the facts and circumstances of the particular case, Plaintiff contends that Lively's testimony regarding reasonableness is unreliable because it is based on incorrect facts. Plaintiff points to Lively's deposition testimony, in which he stated that Plaintiff had a gun in his hand, which he released, just before Bonnette shot him.

Plaintiff asserts that, after Lively rendered this incorrect testimony, defense counsel asked for a recess. Even after the recess, however, Plaintiff asserts that Lively still had an incorrect understanding of the facts, insofar as he testified that Rogers made a blading motion, with a gun in his hand, when Bonnette first encountered him by vehicle one. Further, Plaintiff asserts that

5

Lively incorrectly asserted that Rogers hit Bonnette with the door of vehicle two before Bonnette fired the first shot, when Bonnette has stated that he is unsure of the sequence of these events. Plaintiff further argues that Bonnette's testimony is based on incomplete information because he has not visited the scene, was unable to sketch the scene, and admitted that he did not know enough to testify under oath about what the scene looked like and did not know the orientation of the vehicles at the time of the incident. Further, Lively stated that he did not know whether Bonnette was ever in front of vehicle two, that Bonnette approached vehicle two from the driver's side, and that Rogers revved the engine while Bonnette was standing by the driver's side door.

Bonnette responds that Lively often stated that he did not recall certain facts, but on some occasions was not permitted to refresh his memory before answering questions, and that Lively explained that he was confused about the time frame with regard to his testimony before the recess.

Plaintiff acknowledges that, after the recess, Lively testified that Rogers discarded the weapon, then tried to escape in vehicle two, then ran, and then "bladed off" toward Bonnette, when Bonnette shot him, which is consistent with Bonnette's testimony. However, Lively still testified to an erroneous belief that Bonnette saw Rogers with the gun by the first vehicle, and that Rogers was "blading off" at that time, though Bonnette did not shoot, and still thought that Bonnette was hit by the car door before he fired a shot. In addition, Plaintiff notes, Lively could not generate a rudimentary sketch of the scene even after looking through his entire file to "refresh" his recollection.

6

Plaintiff also asserts that Bonnette offers legal conclusions and invades the province of the jury insofar as he opines that Bonnette had probable cause, did not act unconstitutionally, and acted reasonably. Plaintiff argues that this testimony is not helpful to the jury. Plaintiff further implies that Lively's testimony was a foregone conclusion because Defendant stated that Lively would testify that Bonnette's actions were reasonable in an interrogatory response in 2005, but Lively admitted at his deposition that he did not review the facts necessary to reach his conclusions until 2009, when he prepared his report.

For all these reasons, Plaintiff asserts that Lively's testimony should be excluded.

### III. Analysis

The Rules of Evidence require that the Court ensure that all expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Rule 702 provides for the admissibility of expert testimony if it will "assist the trier of fact to understand the evidence or to determine a fact in issue," and "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702.

Expert testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. FED. R. EVID. 704(a). Wright and Miller notes that

7

Rule 704(a) "does not declare any evidence admissible. Instead, it simply refers to testimony that is 'otherwise admissible.'" 29 FED. PRAC. & P. § 6284. "Accordingly, opinion testimony on ultimate issues still can be excluded if it is objectionable under any other provision in the Evidence Rules. Thus, opinions that merely tell the trier of fact what result to reach or state a legal conclusion in a way that says nothing about the facts are still objectionable. This is because such opinions are not 'helpful' as required by Rule 701 and do not 'assist' as required by Rule 702." *Id.* (footnotes omitted).

As noted by Wright and Miller, "Some courts assert that ultimate issues under Rule 704(a) must be factual and may not state legal conclusions." 29 FED. PRAC. & P. § 6284. This is the approach the Fifth Circuit has taken. *See, e.g.*, *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) ("an expert may never render conclusions of law"); *C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001). Wright and Miller questions this black-and-white approach, noting that "it is often impossible in this context to draw a sound distinction between 'fact' and 'law' since many opinions mix aspects of both" and "[o]ne of the reasons underlying the abolition of the ultimate-issue rule was to avoid the 'odd verbal circumlocutions' in which courts engaged when attempting to draw the distinction between legal conclusions and opinions as to 'ultimate facts.'" 29 FED. PRAC. & P. § 6284.

"Accordingly, in applying Rule 704(a) to opinions that may involve conclusions of law, focus should be on the provision's requirement that those

8

opinions must be 'otherwise admissible.'" *Id*. "In cases involving expert opinion, admissibility under Rule 702 depends on whether the opinion 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Thus, the admissibility of opinion testimony that may involve legal conclusions ultimately rests upon whether that testimony helps the jury resolve the fact issues in the case. This requires both that the jury can understand what the witness has to say and relate it to the facts." *Id*.; *see also Salas v. Carpenter*, 980 F.3d 299, 305 (5th Cir. 1992) ("In deciding whether an expert's opinion should be admitted, the court should focus on Fed.R.Evid. 702's standard of whether the opinion will assist the trier of fact to understand the evidence or to determine a fact in issue. Stated more directly, the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument.") (citations omitted).

Under its prohibition against experts offering opinions in the form of legal conclusions, the Fifth Circuit has held that it is error under Rule 704(a) to allow an expert's testimony about the reasonableness of a police shooting because "[r]easonableness under the Fourth Amendment or Due Process Clause is a legal conclusion." *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003); *see also United States v. Teel*, 299 Fed. Appx. 387 (5th Cir. 2008) ("We further conclude that the district court properly barred Teel's expert from going beyond consideration of the conduct to offer legal conclusions regarding whether the assault on Williams constituted excessive force."); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (witness's testimony including only his views

concerning the reasonableness of the officers' conduct in light of "Fourth Amendment standards" was not a fact-based opinion, but a statement of legal conclusion, and should not have been admitted). Similarly, other courts have held that whether an officer has probable cause is ultimately a legal question for which expert testimony is inappropriate. *Estes v. Moore*, 993 F.2d 161, 163 (8th Cir. 1993).

Lively's proposed opinions are provided, *supra*. The opinions implicated by the rule against legal conclusions are opinions five through eleven: (5) upon Rogers' ignoring the commands, fleeing, and discarding what appeared to be a handgun, Bonnette had reasonable suspicion and probable cause to continue his investigation of Rogers; (6) Bonnette acted reasonably when he attempted to stop Rogers from fleeing in a vehicle; (7) Bonnette acted reasonably in discharging his firearm as Plaintiff revved his engine and attempted to run over Bonnette; (8) when Rogers jumped out of the vehicle and fled on foot, Bonnette acted reasonably in attempting to apprehend Rogers; (9) Bonnette acted reasonably when Rogers made an overt gesture by reaching into his waistband area as if to retrieve another handgun, placing Bonnette in fear of imminent death or serious bodily injury and forcing Bonnette to discharge his firearm at Rogers; (10) deadly force was justified and was appropriate under the totality of the circumstances; and (11) Bonnette acted as a reasonable prudent officer exercising his discretionary authority in good faith at the time he discharged his weapon.

The ultimate legal issue to be decided by the jury in this case is whether

Bonnette's use of deadly force was unreasonable (and therefore in violation of the Fourth Amendment). Proposed opinions 7, 9, 10, and 11 are naked legal conclusions relating to the reasonableness of Bonnette's use of deadly force and Bonnette's qualified immunity defense, and are not permitted.

Reasonableness is a highly fact-specific inquiry, and expert testimony may help the jury to understand certain evidence or determine certain underlying facts, such as whether a suspect poses a threat to the officer or someone else, or whether the officer could objectively perceive such a threat. For example, Lively testified in his deposition that it is dangerous to be by the driver's side door of a vehicle because, either way the vehicle turns, it can hit you. This testimony could help the jury in determining whether the use of force was reasonable because it helps the jury determine whether Rogers/the vehicle posed a threat to Bonnette. However, Lively has stated that he did not test any of his opinions or drive the vehicle, and Lively has not indicated that he was aware of exactly where Bonnette was standing, which would be relevant to whether he was in the path of the vehicle. Moreover, Lively's testimony in this regard is tainted by his use of incorrect facts, such as his belief that Rogers revved the engine while Bonnette was at the driver's side, when Bonnette stated that Rogers revved the engine while Bonnette was in front of the vehicle. Accordingly, Bonnette has failed to show that any of Lively's proposed opinions related to the reasonableness of the use of deadly force or qualified immunity is reliable or helpful to the jury.

Lively's proposed opinions 5, 6, and 8 are also problematic. Proposed

11

opinion 5, that Bonnette had reasonable suspicion and probable cause to continue his investigation of Rogers after their initial encounter, uses legal terms and asserts legal conclusions. "Reasonable suspicion" and "probable cause" are legal terms with specific legal criteria, and "[o]pinions phrased in terms of inadequately explored legal criteria [are] inadmissible." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 435 (5th Cir. 2006). Reasonable suspicion and probable cause are determined based on a fact-intensive, totality-of-the-circumstances inquiry, where expert testimony might be helpful in some respects. But proposed opinion 5 is an inappropriate legal conclusion and not helpful to the jury. And again, Lively demonstrated some confusion regarding the facts that form the basis of his opinion, since he apparently incorrectly believed that Rogers had "bladed off" to Bonnette while holding a gun near vehicle one before fleeing and discarding the gun. Thus, this opinion is both an improper legal conclusion and unreliable. Similarly, Lively's proposed opinions 6 and 8, which are that Bonnette acted reasonably when he attempted to stop Rogers from fleeing in a vehicle and in attempting to apprehend Rogers when he jumped out of the vehicle and fled on foot, are nothing more than conclusions concerning reasonableness. Bonnette has not demonstrated how this testimony would assist the jury in evaluating the evidence or determining a fact in issue. And again, Lively's conclusions regarding Bonnette's actions are tainted by his reliance on incorrect factual information.

Proposed opinion 2 is wholly conclusory and lacking facts. Lively opines

that "once officer Bonnette observed what he perceived to be criminal conduct on the part of Lemont Rogers, Officer Bonnette acted as a reasonable prudent officer would have acted under the same or similar circumstances." This opinion is not tied to any particular behavior on Bonnette's part, nor does it specify what criminal conduct Bonnette perceived. To decide whether Bonnette's use of deadly force was reasonable, the jury must decide if "the arresting officer exceeded that degree of force which a reasonable and prudent law enforcement officer would have applied in making the arrest under the same circumstances." Further, to decide whether Bonnette is entitled to qualified immunity, the jury will have to decide whether Bonnette's conduct was objectively unreasonable in light of clearly established law. Testimony about what a reasonable officer would have done under the same circumstances could be helpful to a jury determination on these issues, but Lively's conclusory opinion that Bonnette acted as a reasonable prudent officer would have acted under the same circumstances does nothing more than tell the jury how to decide the case.

In general, Lively's proposed opinion testimony, which is primarily legal conclusions premised on an incorrect and incomplete understanding of the facts, does not aid the jury in reaching its ultimate conclusion, and instead appears to offer nothing more than the lawyers can argue in closing argument. Rather than helping the jury evaluate the evidence or determine facts in issue, Lively's proposed opinion testimony simply instructs the jury how to rule. This is the type of testimony that is not permitted. The only exceptions are proposed opinion 1 – that Bonnette became an on-duty officer upon hearing shots fired

13

and commencing an investigation, opinion 3 – that Bonnette appropriately investigated the disturbance and gunshots to determine the extent of criminal activity, and opinion 4 – that Bonnette appropriately yelled police commands to Rogers upon seeing him running with a handgun. Accordingly, except for opinions 1, 3, and 4, Lively's proposed opinion testimony is excluded for the reasons stated above.

In his Response, Bonnette asserts that officers are taught in their use-of-force training that "action beats reaction" and to focus on the suspect's hands and react before the suspect points a weapon at them. Bonnette states that, once a weapon is pointed at an officer, the officer cannot react in a timely way, and that this testimony "is the foundation for Officer Bonnette's qualified immunity defense." Though this testimony would assist the jury, the problem with this argument is that this is not a proposed opinion or other testimony set forth in Lively's report. All that is set forth in Lively's report concerning the use of deadly force are the ultimate legal conclusions that Bonnette's use of force was reasonable and justified. Nor has Bonnette submitted any deposition testimony to such effect. Thus, there is no indication at this time other than Bonnette's counsel's argument that this would be Lively's proposed testimony, nor is there any indication that Plaintiff's counsel was put on notice of this proposed testimony or had a chance to cross-examine Lively on this testimony. Thus, at this time, the Court will grant Plaintiff's motion to exclude Lively's testimony in this regard. However, Defendant may revisit this issue at the pre-trial conference.

14

### III. Conclusion

For the foregoing reasons, it is ORDERED that Defendant's Motion to Exclude Testimony and Opinions of Ben Lively (docket no. 126) is GRANTED IN PART and DENIED IN PART.

It is so ORDERED.

SIGNED this 11th day of August, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE